IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ARETHA SMITH,                        :
                                     :
        Plaintiff,                   :
                                     :
vs.                                  :
                                     :        CIVIL ACTION 14-0392-M
CAROLYN W. COLVIN,                   :
Social Security Commissioner,        :
                                     :
        Defendant.                   :


MEMORANDUM OPINION AND ORDER


        In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),

Plaintiff seeks judicial review of an adverse social security

ruling denying claims for disability insurance benefits and

Supplemental Security Income (hereinafter *SSI*) (Docs. 1; Tr.

115-24).  The parties filed written consent and this action has

been referred to the undersigned Magistrate Judge to conduct all

proceedings and order judgment in accordance with 28 U.S.C. §

636(c) and Fed.R.Civ.P. 73 (*see* Doc. 23).  Oral argument was

waived in this action (Doc. 24).  After considering the

administrative record and the memoranda of the parties, it is

**ORDERED** that the decision of the Commissioner be **AFFIRMED** and

that this action be **DISMISSED**.

        This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-four years old, had completed a high school education[1] (Tr. 45), and had previous work experience as a fish plant worker, a dietary aide, and a meat packager (Tr. 51).  Smith alleges disability due to major depressive disorder, migraine headaches, hypertension, anxiety, panic disorder with agoraphobia, fatigue, side effects from medication, back pain, GERD, obesity, irritable bowel syndrome, and peripheral edema  (Doc. 14).

The Plaintiff applied for SSI and disability benefits on October 19 and 27, 2010, respectively, alleging a disability onset date of August 12, 2010 (Tr. 15, 115-24).  An Administrative Law Judge (ALJ) denied benefits, determining that although she could not return to her past relevant work, Smith could perform specific light work jobs (Tr. 15-27).  Plaintiff requested review of the hearing decision (Tr. 8-11), but the

---

[1]Plaintiff received a Graduate Equivalency Degree (Tr. 45).

Appeals Council denied it (Tr. 1-6).

Smith claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Smith alleges that: (1) The ALJ's residual functional capacity (hereinafter *RFC*) assessment is incomplete; (2) the ALJ failed to conduct a full and fair hearing; and (3) the ALJ's questions to the Vocational Expert (hereinafter *VE*) did not properly include all of her impairments (Doc. 15). Defendant has responded to—and denies—these claims (Doc. 18). The relevant evidence of record follows.[2]

On February 26, 2010, Smith was examined at the Holifield Clinic for a week-long headache; she suffered no vomiting, nausea, or dizziness (Tr. 317-20). Her medications at that time included Phenergan[3] with codeine, Lortab,[4] and Bupap[5] (Tr. 317). Toradol[6] was prescribed (Tr. 318).

On April 25, 2010, Smith went to Alabama Neurology & Sleep Medicine, complaining of recurring, throbbing headaches, located

---

[2]As Smith's asserted disability onset date is August 12, 2010, the Court will not review evidence pre-dating that by a long period.

[3]*Phenergan* is used as a sedative, sleep aid, or to treat nausea, vomiting, or pain. http://www.drugs.com/phenergan.html

[4]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[5]*Bupap* combines acetaminophen with a sedative to treat tension headaches, decrease anxiety, and cause relaxation. *See* http://www.webmd.com/drugs/2/drug-15929/bupap-oral/details

[6]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

in her bifrontal and occipital lobes; Topomax,[7] Valium,[8] Treximet,[9] and Imitrex[10] were prescribed (Tr. 325).  An MRI of the brain, several weeks later, was essentially unremarkable (Tr. 327).

On November 8, 2010, Plaintiff went to the West Alabama Mental Health Center (hereinafter *WAMHC*) for depression accompanied by crying episodes and auditory and tactile hallucinations (*see generally* Tr. 336-48).  On November 30, Smith reported continued anxiety and depression, though tactile hallucinations had lessened (Tr. 342).  On December 3, a Psychiatrist approved a diagnosis of major depressive disorder, with a single episode with psychotic features, as well as migraines and hypertension; it was noted that although her current Global Assessment of Functioning (hereinafter *GAF*) was 55,[11] her highest GAF over the past year had been 85[12] (Tr. 343).

---

[7]*Topomax* is used in the treatment of migraine headaches. *Physician's Desk Reference* 2378-79 (62nd ed. 2008).

[8]**Error! Main Document Only.**Diazepam, better known as Valium, is a class IV narcotic used for treatment of anxiety.  *Physician's Desk Reference* 2765-66 (62nd ed. 2008).

[9]*Treximet* contains naproxen and sumatriptan, used to relieve headaches and migraine symptoms.  http://www.webmd.com/drugs/2/drug-150380/treximet-oral/details

[10]*Imitrex* is "indicated for the acute treatment of migraine attacks with or without aura."  *Physician's Desk Reference* 1036-37(52nd ed. 1998).

[11]"A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

On December 14, 2010, Smith was feeling worse physically and her depression continued (Tr. 406).  On January 20, 2011, Plaintiff had a severe migraine but was in a better mood (Tr. 405).

On December 22, 2010, Smith went to the Greene County Hospital Physicians Clinic complaining of depression, anxiety, and other problems (Tr. 350-51).  Pristiq[13] was prescribed.

On January 11, 2011, Joanna Koulianos, a non-examining Psychologist reviewed the evidentiary record in existence at that time and indicated that Smith suffered from a major depressive disorder, experiencing a single episode with psychotic features (Tr. 352-65).  The Psychologist suggested that she would have mild restrictions of daily activities and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace.  On that same date, Koulianos completed a mental RFC assessment, indicating that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions (Tr. 366-69).  She would also be moderately limited in maintaining attention and concentration for extended periods, interacting appropriately with the general public, accepting instructions

---

[12]A GAF of 81 to 90 indicates that the individual has "minimal symptoms, good functioning in all areas, [is] interested and involved in a wide range of activities, socially effective, generally satisfied with life, [with] no more than everyday problems or concerns."  *See* https://depts.washington.edu/washinst/Resources/CGAS/GAF%20Index.htm

[13]*Pristiq* is used in treating depression and anxiety. http://www.webmd.com/drugs/2/drug-150251/pristiq-oral/detail

and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting.

On March 3, 2011, Dr. Ronnie T. Chu examined Plaintiff who complained of intermittent migraine headaches, primarily on the right (Tr. 371-91). The Doctor noted normal gait, no motor weakness or sensory deficits; grip was within normal limits. Plaintiff had good muscle bulk without atrophy and good fine motor and gross motor movements.

On February 4, 2011, Smith went to WAMHC, claiming anxiety and depression and that Pristiq was only minimally helpful; she stated that she was not currently on medications (Tr. 413-15). Prescriptions for Prozac,[14] Vistaril,[15] and Trazodone[16] were made. On February 23, 2011, Smith reported improvement with the medications; sleep and appetite had improved  (Tr. 404). Smith was still improving on March 24, 2011 though there had been some episodes of depression and anxiety; social activities had increased (Tr. 403). On May 6, Plaintiff reported that she was sleeping better; her thoughts were logical, her mood neutral, and her affect was full and appropriate (Tr. 409-12). On June 8, 2011, Smith reported that her depression was not as

---

[14]*Prozac* is used for the treatment of depression. *Physician's Desk Reference* 859-60 (52nd ed. 1998).

[15]*Vistaril* is used to treat anxiety and tension and may be used to control nausea and vomiting. http://www.drugs.com/vistaril.html

[16]*Trazodone* is used for the treatment of depression. *Physician's Desk Reference* 518 (52nd ed. 1998).

significant and that her appetite and sleeping were improving
(Tr. 402).  On August 17, 2011, the Psychiatrist noted overall
improvement though intermittent depression occurred; she
complained that she had no motivation, crying spells, and
tactile hallucinations (Tr. 441-43).  On September 22, 2011,
Smith reported sleep and appetite were not as good, though
stress was about the same; she reported a panic attack since her
previous examination and visual hallucinations (Tr. 433-35).
Two days later, Plaintiff reported auditory hallucinations (Tr.
432).  On October 19, Plaintiff reported doing well and not
feeling as stressed; she had had no depression since starting
her medication (Tr. 438-41).  Her diagnosis was major depressive
disorder and a panic disorder with agoraphobia (Tr. 469).  On
November 8, Smith reported an inability to leave her home
because of excessive worry, stress, and sadness; the therapist
talked with her about relaxation techniques (Tr. 429).

On July 5, 2011, Smith saw Dr. Hodge at Holifield Clinic,
complaining of headaches and that her Topomax was not working
(Tr. 446-49).  She was seen on February 9, 2012, complaining of
sinus congestion and sneezing and some right knee pain due to a
motor vehicle accident (Tr. 452-54).

On January 18, 2012, Plaintiff told WAMHC that she was
having both auditory and visual hallucinations; she reported
less than full compliance with her medications, resulting in

nervousness (Tr. 466-67).  Risperdal[17] was prescribed.  On
February 17, Smith reported being tired and stressed (Tr. 459).
On April 18, Plaintiff was anxious, depressed, and was still
hallucinating, but acknowledged that she was not taking her
medications consistently; the Psychiatrist noted that she does
well when she is compliant with her treatment regimen (Tr. 478,
480, 484).  On May 14, Smith was sad, nervous, slept all of the
time, and lacked any energy (Tr. 476).  On June 18, Plaintiff
reported eating and sleeping better though she had some
depression episodes (Tr. 490, 495-97).  On July 16, Smith was
less depressed, interacting better, and getting out more; she
was also medication compliant (Tr. 486, 494).  Appetite was good
and she was sleeping well; her hallucinations had stopped.  She
did get anxious when in crowds.

On July 18, 2012, Plaintiff reported to WAMHC that she was
sad and anxious (Tr. 528).  On August 30, she said that her
medications were working well (Tr. 526).  On September 27, Smith
was doing well though stressed and not sleeping well (Tr. 523).
On October 2, the Psychiatrist noted that Smith stated that she
was less depressed and less anxious though she had trouble
sleeping; she was taking her medications as prescribed and had
had only one panic attack (Tr. 519-20, 522).  On November 12,

---

[17]*Risperdal* is used "for the management of the manifestations of
psychotic disorders."  *Physician's Desk Reference* 1310-13 (52nd ed.
1998).

8

Plaintiff reported medication compliance and fewer
hallucinations (Tr. 515-16).  On January 4, 2013, Smith reported
that she had not had auditory or visual hallucinations in six
months or tactile hallucinations in three months (Tr. 513-14).
On January 25, Plaintiff reported medication compliance and
doing better though she still had days of depression and
anxiety; she had had no panic attacks or psychotic episodes (Tr.
505-08, 512).

This concludes the Court's summary of the evidence.

Smith's first claim in bringing this action is that the
ALJ's RFC assessment is incomplete in that it ignores the impact
of all of her impairments (Doc. 15, pp. 2-5).  Plaintiff goes on
to complain that the ALJ did not consider the combination of all
of her impairments, that he "cherry-picked" the evidence, that
he ignored her treatment of panic disorder with agoraphobia, and
that he failed to consider her diagnoses of irritable bowel
syndrome and fatigue.

The Court notes that the ALJ is responsible for determining
a claimant's RFC.  20 C.F.R. § 404.1546 (2014).  That decision
cannot be based on "sit and squirm" jurisprudence.  *Wilson v.
Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court
also notes that the social security regulations state that
Plaintiff is responsible for providing evidence from which the
ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

In his determination, the ALJ found Smith to have the RFC

> to perform light work except that she cannot
> climb ladders, ropes or scaffolds; she cannot
> work at unprotected heights; she is limited to
> simple, routine and repetitive tasks in an
> environment that does not involve interaction
> with the general public; and she should work in a
> stable, predictable environment where there are
> minimal changes in the routine.

(Tr. 20).[18]

Plaintiff has claimed that the ALJ failed to consider the
combined effects of Plaintiff's impairments as he is required to
do.  It is true that "the Secretary shall consider the combined
effect of all of the individual's impairments without regard to
whether any such impairment, if considered separately, would be
of such severity."  42 U.S.C. § 423(d)(2)C).  The Eleventh
Circuit Court of Appeals has noted this instruction and further
found that "[i]t is the duty of the administrative law judge to
make specific and well-articulated findings as to the effect of
the combination of impairments and to decide whether the

---

[18]"Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10 pounds.
Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when
it involves sitting most of the time with some pushing and pulling of
arm or leg controls.  To be considered capable of performing a full or
wide range of light work, you must have the ability to do
substantially all of these activities.  If someone can do light work,
we determine that he or she can also do sedentary work, unless there
are additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time." 20 C.F.R. § 404.1567(b)
(2014).

combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In his decision, the ALJ specifically noted that Smith did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 18). This language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").

Smith also asserts that the ALJ "cherry-picked" the evidence, using only that which supported his conclusions (Doc. 15, p. 5). The Court notes that Plaintiff fails to point to any evidence in making this assertion and finds no support for it, noting the following reports by Smith and her physicians:

> On November 8, 2010, Plaintiff went to the WAMHC for depression accompanied by crying episodes and auditory and tactile hallucinations (*see generally* Tr. 336-48).
> On February 4, 2011, Smith admitted that she was not currently on medications (Tr. 413-15). On February 23, she reported improvement with the medications; sleep and

appetite had improved (Tr. 404).

On March 3, Dr. Chu noted normal gait, no motor weakness or sensory deficits, good muscle bulk without atrophy, good fine motor and gross motor movements, and grip was normal (Tr. 371-91).

On March 24, Plaintiff reported episodes of depression and anxiety but social activities had increased (Tr. 403).

On May 6, Plaintiff reported that she was sleeping better; her thoughts were logical, her mood was neutral, and her affect was full and appropriate (Tr. 409-12).

On June 8, Smith's depression was not as significant; her appetite and sleeping were improving (Tr. 402).

On August 17, a Psychiatrist noted overall improvement though intermittent depression occurred; Smith claimed that she had no motivation, crying spells, and tactile hallucinations (Tr. 441-43).

On September 22, Smith reported sleep and appetite were not as good, though stress was about the same; she reported a panic attack and visual hallucinations in the past month (Tr. 433-35).

On October 19, Plaintiff was doing well and not feeling as stressed; she had had no depression since starting her medication (Tr. 438-41).

On November 8, Smith reported an inability to leave her home because of excessive worry, stress, and sadness (Tr. 429).

On January 18, 2012, Plaintiff told WAMHC that she was having both auditory and visual hallucinations; she reported less than full compliance with her medications, resulting in nervousness (Tr. 466-67).

On April 18, Plaintiff was anxious, depressed, and hallucinating, but was not taking her medications consistently; the Psychiatrist noted that she did well when she was compliant with her treatment regimen (Tr. 478, 480, 484).

On May 14, Smith was sad, nervous, slept all of the time, and lacked energy (Tr. 476).

On June 18, Plaintiff reported eating and sleeping better though she had some depression (Tr. 490, 495-97).

On July 16, Smith was less depressed, interacting better, and getting out more; she was also medication compliant (Tr. 486, 494).  Appetite was good and she was sleeping well; her hallucinations had stopped.

On July 18, 2012, Plaintiff was sad and anxious (Tr. 528).

On August 30, she said that her medications were working well (Tr. 526).

On September 27, Smith was doing well though stressed and not sleeping well (Tr. 523).

On October 2, Smith was less depressed and anxious though she had trouble sleeping; she was taking her medications as prescribed and had had only one panic attack (Tr. 519-20, 522).

On November 12, Plaintiff reported medication compliance and fewer hallucinations (Tr. 515-16).

On January 4, 2013, Smith reported that she had not had auditory or visual hallucinations in six months or tactile hallucinations in three months (Tr. 513-14).

On January 25, Plaintiff reported medication compliance and doing better though she still had days of depression and anxiety; she had had no panic attacks or psychotic episodes (Tr. 505-08, 512).

This evidence fairly demonstrates that Plaintiff's symptoms have caused highs and lows in her daily life.  However, there are highs along with the lows in this two-year summary.  "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) (2014).  By her own statements to care providers, Smith has not met the one-year requirement.

The Court also notes a recurring theme in the medical evidence that Smith does better when she takes her medications as ordered.  Social Security regulations state that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."

20 C.F.R. § 1530(a) (2014).  The regulation goes on to state that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled."  20 C.F.R. § 404.1530(b) (2014).  The Court notes that the medical records clearly note repeated noncompliance.

Smith also asserts that the ALJ ignored her treatment of panic disorder with agoraphobia, and that he failed to consider her diagnoses of irritable bowel syndrome and fatigue.  The Court notes that the evidence shows that although a diagnosis of panic disorder with agoraphobia exists in the record, her psychiatrist specifically noted that Plaintiff was non-compliant with her medications (Tr. 467, 484).  Furthermore, the treatment records show that Plaintiff's mental health had improved, she was more socially active, and she was experiencing fewer panic attacks.  With regard to her fatigue and irritable bowel syndrome, the Court notes the lack of medical evidence regarding these impairments, pointing to Plaintiff's Fact Sheet (Doc. 14) giving two page references each for the separate impairments, only one of which comes after her alleged onset date.

In summary, though Smith asserts multiple reasons why the ALJ failed to properly assess her RFC, there is no medical support for them.  This claim is without merit.

Plaintiff next claims that the ALJ failed to conduct a full and fair hearing.  She specifically asserts that the ALJ should

have ordered a psychiatric consultative examination (Doc. 15, pp. 5-6).  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court notes that medical records from WAMHC number more than one hundred pages and span more than two years' time in fairly regular installments.  The Court finds that the evidence within those records, especially considering Plaintiff's own statements of decreasing symptoms and ailments when she complied with her medical regimen, was sufficient for the ALJ to have made a decision regarding Smith's mental impairments.  This claim lacks merit.

Plaintiff's final claim is that the ALJ's questions to the VE did not properly include all of her impairments.  She specifically references her panic attacks with agoraphobia diagnosis and the ALJ's failure to consider the side effects of her medications (Doc. 15, pp. 7-8).  The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

The Court has already discussed Smith's panic attacks and

finds that no further discussion is warranted here.

With regard to her medication side effects, Plaintiff notes that "the ALJ's decision is, for the most part, silent" (Doc. 15, p. 7). What Plaintiff fails to acknowledge, however, is that the ALJ specifically found the following:  "While the claimant testified she experiences lightheadedness and frequent urination secondary to her hypertension and medications, there is no documentary evidence showing she has related these symptoms to her treating physicians on a recurring basis, suggesting that they do not occur with the frequency alleged" (Tr. 22). Smith fails to point to anything in the record that contradicts this finding. This claim lacks merit.

Plaintiff has raised three claims in bringing this action. They are all without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 6th day of May, 2015.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE